PAULINE S. MARAZITA *v.* JOHN A. MARAZITA

SUPERIOR COURT  FAIRFIELD COUNTY  FILE No. 123278
AT BRIDGEPORT

Memorandum filed August 1, 1967

*Joseph Mirsky,* of Bridgeport, for the plaintiff.

*Miller & Baroff,* of Bridgeport, for the defendant.

GRILLO, J.   The plaintiff obtained a decree of legal separation from the defendant on June 28, 1966 *(FitzGerald, J.),* and the defendant now petitions the court for a decree finally dissolving and terminating the marriage under § 46-30 of the General Statutes.   The plaintiff, a Roman Catholic, resists the application solely on religious grounds.

The defendant is fifty-eight years of age.   For two and a half years he has been living in the state of New York, where he has been employed.   He candidly admits that it is his desire to marry a "nice person" in the event the petition is granted and to continue his New York residence.   The plaintiff, fifty-three years of age, lives in Bridgeport. Since the date of the decree of separation, the parties have not resumed marital relations.   The evidence furthermore establishes that the parties entertain neither a desire for nor a hope for reconciliation.   The decree was granted on the grounds of adultery.   Judge FitzGerald's comprehensive memorandum indicates that at the trial for a legal separation the plaintiff evinced a "vindictive" demeanor and appeared bent on reducing the financial status of the defendant to one of penury because of his wrong doing.   The award of alimony to the plaintiff was a generous one—an assignment of the defendant's interest in income producing real estate and periodic monthly payments of $25.

It may well be that the plaintiff, in initiating her original action for a legal separation and in opposing the instant action, was motivated by what one author maintains is the preference of the Catholic Church "that judicial separation or separate maintenance be sought in order . . . to leave the door open for a possible return to conjugal cohabitation."

Dailey, "The Catholic Attorney and the Moral Lawfulness of the Civil Divorce Case," 38 U. Det. L.J. 255, 273, as reported in Goldstein & Katz, The Family and the Law. The state, too, does not favor divorces, and its policy is to maintain the family relation as a life status. *McCarthy* v. *Santangelo,* 137 Conn. 410, 412. Parenthetically, it might be stated that the relief allowed by the statute, § 46-30, is not termed a divorce, but rather a decree finally dissolving and terminating the marriage. *Gombatz* v. *Gombatz,* 20 Conn. Sup. 357, 359. The state, however, recognizes that "circumstances may arise which require, for the good of all concerned, including society itself, that the parties be released from their obligations." *Casale* v. *Casale,* 138 Conn. 490, 492. Some marriages should be terminated for the benefit of all concerned. Harper & Harper, "Lawyers and Marriage Counselling," 1 J. Family L. 73, as reported in Harper & Skolnick, Problems of the Family (Rev. Ed.) p. 482. While religious factors may well be considered by the court in its determination of divorce petitions; *Murphy* v. *Murphy,* 143 Conn. 600; it must also consider whether there exist social considerations which make it contrary to public policy to insist on the maintenance of a union which has utterly broken down. *Weil* v. *Weil,* 37 Cal. 2d 770, 784. This must be so since the state, as well as the parties, has an interest to be considered in every divorce action. *Lindquist* v. *Lindquist,* 137 Conn. 165, 168.

The relief sought by the petition, equitable in nature, may be granted or denied in the discretion of the court. *Lee* v. *Lee,* 145 Conn. 355, 360. The plaintiff, in effect, requests the court to give paramount consideration to her religious convictions in determining this application, to the exclusion of all other applicable criteria. The court will not, of course, allow its discretion so to be fettered.

Neither the plaintiff nor the defendant is interested in maintaining this marriage. The legitimate objects of matrimony have been destroyed. The plaintiff is concerned not with maintaining the marriage but in retaining a marriage status. Thus, the marriage has passed the state of moribundity. It is defunct.

A decree may enter finally dissolving and terminating the marriage of the parties to this action.